UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-23320-CIV- MARTINEZ

DIANNA CRAVENER,
individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

SEDUCTION COSMETIC CENTER CORP,

    Defendant.
_____/

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND ALTERNATIVELY TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS

Defendant, SEDUCTION COSMETIC CENTER CORP ("Seduction"), by and through its undersigned counsel and pursuant to Rule 12(b)(6), Fed. R. Civ. P., hereby moves this Court to dismiss Plaintiff's Amended Complaint [ECF No. 11], and in support thereof states as follows:

### I. INTRODUCTION

This is one of the hundreds of Florida Telephone Solicitation Act ("FTSA") putative class action complaints in the Southern District of Florida. In this case, Plaintiff Dianna Cravener ("Plaintiff") contends this Court has subject matter jurisdiction based upon the Class Action Fairness Act but fails to plead the essential jurisdictional allegations and fails to plead anything more than conclusory allegations based upon information and belief. Even if this Court has jurisdiction, the FTSA is unconstitutional and Plaintiff's recitation of the legal elements lacks sufficient facts and is conclusory. Finally, Plaintiff's cause of action for an injunction should be dismissed as duplicative and failing to adequately allege a future injury.[1] As explained below, dismissal with prejudice is appropriate. In the alternative only, this Court should strike Plaintiff's

---

[1] For the purpose of preserving Seduction's argument, if Plaintiff moves past dismissal, the vast majority of any class is subject to arbitration.

1

class allegations because common questions of law and fact do not predominate and because the proposed classes are impermissibly "fail-safe."

## II. STANDARD OF REVIEW

Rule 12(b)(6), Fla. R. Civ. P., provides for dismissal where a plaintiff "fail[s] to state a claim upon which relief can be granted." At this stage, "the question is whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint that merely provides "labels and conclusions or a formulaic recitation of the elements of a cause of action" or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" is insufficient to survive a Rule 12(b)(6) motion to dismiss. *Worthy*, 930 F.3d at 1217 (internal quotations and citations omitted). "Where a complaint pleads facts merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Hernandez v. GM Fin. Co.*, No. 19-cv-20136, 2019 U.S. Dist. LEXIS 42690, at *4–5 (S.D. Fla. Mar. 13, 2019) (citing *Iqbal*, 556 U.S. at 678) (internal quotations omitted). Although "[a] plaintiff need not plead 'detailed factual allegations[,] . . . a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014)). Plaintiff must "include factual allegations for each essential element of his [] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Where a law upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is appropriate. *See, e.g.*, *Harris v. Mex. Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

Finally, as to an injunction, a plaintiff must allege plausible facts establishing "continuing, present adverse effects" traceable to defendant's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Specifically, a plaintiff seeking "injunctive relief . . . must demonstrate that he is likely to suffer future injury . . . at the hands of the defendant" and "the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203–04 (11th Cir. 1991). Conclusory allegations are insufficient and need not be accepted as true.

*See Tomelleri v. Natale*, Case No. 19-CV-81080, 2020 WL 5887151, at *2 (S.D. Fla. July 16, 2020).

### III. MEMORANDUM OF LAW

The Complaint asserts one cause of action which seeks relief under the recently-amended "automated" calling restrictions of the Florida's Telephone Solicitation Act, Fla. Stat. § 501.059(8)(a) ("FTSA"). While Count I seeks damages, Count II only seeks "injunctive relief" with respect to the same alleged FTSA violations. For the Florida causes of action, Plaintiff contends that this Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

As discussed below in more detail, this Court should dismiss the claims for four reasons. First, this Court lacks subject matter jurisdiction. Second, even if this Court has subject matter jurisdiction, the FTSA is unconstitutional and the claims fail to meet the minimal pleading requirements. Third, the injunction count should be dismissed because an injunction is not a standalone cause of action and instead merely a remedy, and Plaintiff fails to meet the requirement for "future" injury.

**A.     This Court Should Dismiss this Action Because it Lacks Subject Matter Jurisdiction**

The plaintiff bears the burden of adequately pleading, and ultimately proving, jurisdiction. *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007). In this case, Plaintiff premises this Court's subject matter jurisdiction on the CAFA. [ECF No. 11] (Am. Compl., ¶ 8). The CAFA grants federal district courts original jurisdiction over class actions where at least one plaintiff is diverse in citizenship from any defendant (minimal diversity), the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed plaintiff class contains at least 100 members. 28 U.S.C. § 1332(d); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911–12 (11th Cir. 2014). The plaintiff's claims must also involve common questions of law or fact. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1202–03 (11th Cir. 2007).

In *Soldevilla*, the court *sua sponte* found that it lacked subject matter jurisdiction where the plaintiff did not allege "facts sufficient to show that the size of the putative class exceeds 100 persons, or that the aggregate amount in controversy exceeds $5 million." *Soldevilla v. On the Barrelhead, Inc.*, 19-CV-14462, 2020 WL 13401897, at *2 (S.D. Fla. Apr. 13, 2020). The court there explained that alleging facts under "information and belief" was not sufficient, that plaintiff's allegation that the aggregate amount in controversy is likely to exceed the $5 million threshold

was conclusory, and that plaintiff's allegation of numerosity "suggest she has no idea how many individuals are in the proposed class." *Id.* Specifically:

> Plaintiff's Complaint simply asserts, based on "information and belief," that "Defendant has sent unsolicited commercial electronic mail messages like the ones sent to Plaintiff to thousands of consumers." [Complaint, ¶ 37]. Plaintiff admits she does not know "the exact number" of members in the proposed class, but claims to "believe[ ] the class members number in the several thousands, if not more." [Complaint ¶ 36]. She does not explain how she arrived at these suppositions, and thus cannot explain how the aggregate amount in controversy is likely to exceed the $5,000,000 threshold. Her allegations regarding numerosity of other email recipients suggest she has no idea how many individuals are in the proposed class.

*Id.* Moreover, the plaintiff's statement that the number of class members would be ascertained through discovery—instead supported the fact that her statement of jurisdiction was speculative and did not relieve her of the threshold burden of establishing CAGA jurisdiction. *Id.* The court therefore held that it lacked jurisdiction and the matter would be dismissed. *Id.* at *3.

Similarly, this Court has held that using "upon information and belief" is insufficient to meet the *Twombly* standard. *Damian v. Meftah*, 19-25273-CIV, 2021 WL 8775762, at *4 (S.D. Fla. Dec. 28, 2021) (Martinez, J.) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." (quoting *United Am. Corp. v. Bitmain, Inc.*, 530 F. Supp. 3d 1241, 1275 n.21 (S.D. Fla. 2021))); *id.* ("[A]llegations based 'upon information and belief' are not a substitute for establishing jurisdictional facts." (quoting *Anthony v. Sandbox Group, LLC*, 20-20130-CIV, 2021 WL 2000367, at *4 (S.D. Fla. Mar. 8, 2021))). Other courts within the Eleventh Circuit hold the same. *See Sellstate Realty Sys. Network, Inc. v. Black*, 220CV00414JLBNPM, 2021 WL 354169, at *2 (M.D. Fla. Feb. 2, 2021) (dismissing complaint in part because the court was unable to determine how plausible plaintiff's "belief" might be where complaint alleged defendant did things "upon information and belief"); *Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC*, 21-60125-CIV, 2021 WL 230178, at *2 (S.D. Fla. Jan. 22, 2021) ("These beliefs relay, at most [a plaintiff's] mere unverified contention[s], which [are] insufficient to satisfy the Court that the requirements of diversity jurisdiction have been met." (citing *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1228 (11th Cir. 2017))); *Phoenix Entm't Partners, LLC v. Orlando Beer Garden, Inc.*, 6:16-CV-80-ORL-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) (recommending denial of a motion for default,

explaining that "[c]onclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."), report and recommendation adopted, 2016 WL 1559164 (M.D. Fla. Apr. 18, 2016). *See also Twombly*, 550 U.S. at 551 (declining to accept as true the conclusory allegation that companies had entered conspiracy "upon information and belief" without enough well-pleaded facts).

In this situation, Plaintiff has not alleged minimal diversity, has not alleged that there are a sufficient amount of putative class members, and has not adequately alleged that there is a sufficient amount in controversy. Additionally, the use of so many "information and belief" allegations shows the speculative nature of the amended complaint. *See* (Am. Compl. at ¶ ¶ 8, 16, 36, 41). Finally, as explained in more detail *infra* Part II.F.2, plaintiff's proposed class does not involve common questions of law or fact.

First, as to minimal diversity, Plaintiff alleges she is citizen and resident of Florida, (Am. Compl., at ¶ 5), and that Defendant's primary place of business is in Florida. (*Id.* at ¶ 7). However, Plaintiff fails to allege that there is at least one non-Florida individual. In the jurisdictional statement Plaintiff alleges that she "**believes** . . . at least 10,000 text messages were transmitted to consumers in Florida." (*Id.* at ¶ 8). Plaintiff also alleges that "on information and belief" Defendant sent at least 50 text message solicitations to 50 "consumers in Florida." (*Id.* at ¶ 36). Similarly, in the numerosity section of the complaint, Plaintiff alleges that "upon information and belief" Defendant has placed sales calls to telephone numbers "belonging to at least 50 persons." (*Id.* at ¶ 41). In short, rather than allege minimal diversity, Plaintiff has alleged that she believes text messages were sent to 50 consumers in Florida—there is no allegation of a non-Florida consumer.

Second, there is no allegation regarding the amount of class members. Instead, Plaintiff alleges, "The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery." (Am. Compl., at ¶ 42). This is not sufficient. In *Soldevilla*, the plaintiff admitted she did not know the exact number of members in the proposed class and alleged that the number of class members can only be ascertained through discovery. 2020 WL 13401897, at *2. The court found that the pointing to discovery, "only serves to underscore the speculative nature of her statement and intimates that she does not have a factual basis for believing that jurisdiction exists." *Id.* Similarly, in *White*, CAFA jurisdiction was lacking when plaintiff's number of proposed class members was plead vaguely as "hundreds," and only "upon information

and belief." *White v. Impac Funding Corp.*, 6:10-CV-1780-ORL-28, 2011 WL 836947, at *3 (M.D. Fla. Feb. 15, 2011), report and recommendation adopted, 2011 WL 861172 (M.D. Fla. Mar. 9, 2011). The court explained that the "vague allegations are not a substitute for establishing jurisdictional facts." *Id. See Handforth v. Stenotype Institute of Jacksonville, Inc.*, 2010 WL 55578, at *2 (M.D. Fla. 2010) (finding allegations of citizenship "upon information and belief" to be insufficient to support diversity and, as a result, jurisdiction under CAFA was inappropriate).

Third, the CAFA requires an amount in controversy to exceed $5,000,000. 28 U.S.C. § 1332(d)(2). Plaintiff alleges that the amount is "at least" $5,000,000. (Am. Compl., at ¶ 8). However, the source of this knowledge is Plaintiff's **belief** that Defendant has sent at least 10,000 FTSA violating text messages to consumers in Florida, which would be $500.00 per text message. (*Id.*). *See* Fla. Stat. § 501.059(10)(a)(2). "Speculation alone is inadequate to establish the amount in controversy." *Calta v. Vision Solar FL, LLC*, 8:22-CV-897-CEH-MRM, 2022 WL 17730114, at *4 (M.D. Fla. Dec. 16, 2022). *See Soldevilla*, 2020 WL 13401897, at *2. Plaintiff's allegation is not sufficient, is not plausible, and the amount in controversy allegation is conclusory.

Finally, as explained in more detail below, plaintiff's claims do not involve common questions of law or fact. Therefore, this Court lacks subject matter jurisdiction and should dismiss this action.

**B.** **This Court Should Dismiss the FTSA Claims Because the FTSA is Unconstitutional and the Claims Fail to Meet the Minimal Pleading Requirements**

Plaintiff brings two counts for violation of the FTSA. The first, Count I, seeks relief based upon a violation of Section 8(a). (Am. Compl. at ¶ 50) (*citing* Fla. Stat. § 501.059(8)(a)). The second, Count II, is a claim for injunctive relief. (*Id.* at ¶ 59). As explained below, Section 8(a) is unconstitutional because it violates the dormant commerce clause, is unconstitutionally vague, and is an unconstitutional restriction on free speech. Even if the statute survives review, Plaintiff fails to meet the minimal pleading requirements and this Court should still dismiss the claim.

**1.** **Section 8(a) Violates the Dormant Commerce Clause**

"The Commerce Clause grants to Congress the power to regulate interstate and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Id.* (quoting *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989)). When considering

6

whether the law violates the dormant Commerce Clause, courts consider (1) "whether the law or regulation directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests;" and (2) whether the law "unduly burden[s] interstate commerce." *Id.* at 1243–44 (internal quotations omitted).

A "state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Healy*, 491 U.S. at 332. State legislation which attempts to "directly" "assert extraterritorial jurisdiction over persons or property" offends sister States and exceed the inherent limits of the State's power. *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (internal quotation omitted). Even if the state did not intent to reach extraterritorial jurisdiction, statutes which have the "practical effect of controlling conduct beyond the boundaries of the state are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v. McCollum*, 08-61664-CIV-MARTINEZ-BROWN, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (quoting *Healy*, 491 U.S. at 336–37).

For example, in *TelTech Systems*, a Florida statute attempted to prohibit people from using Caller ID "spoofing" which had the effect of displaying a different phone number to the call recipient. This Court concluded that the statute had "the practical effect of regulating commerce that occur[ed] wholly outside the state of Florida" and thus violated the Commerce Clause. This Court explained that it was impossible for the callers to determine whether the recipient of a call was in Florida and therefore the "logical consequence of this impossibility" was that the plaintiff/callers were unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute. *Id.* at *8.

In this situation, the result is no different. The FTSA defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, ***doing business in this state***, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida or from other states or nations to consumers located in Florida." *Id.* § (1)(e). There is also a rebuttable presumption that a call "made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id.* § (8)(d).

However, an area code is not determinative whether an individual is located in Florida. For example, an out-of-state lawyer may be practicing virtually in Florida. *See, e.g.*, *In re Amendments to Rule Regulating Florida Bar 4-5.5*, 334 So. 3d 1272, 1273 (Fla. 2022); American Bar Association

7

Standing Committee on Ethics and Professional Responsibility, Formal Opinion 495 (Dec. 16, 2020). Similarly, a business in Hawaii may place might place a "telephonic sales call" using an "automated system" to a phone number with a New York area code, but the recipient may be located or reside in Florida. *See* Unsettled State: The moveBuddha 2021 Migration Report, moveBuddha LLC, last visited Feb. 28, 2023, available at *https://www.movebuddha.com/blog/migration-moving-report/* ("Florida saw a sharp rise in net migration flow in 2021 . . . . more than twice as many people moved into Florida than left it."). That out-of-state business would be liable for violating the FTSA even if it had no way of determining the recipient's actual location or residence. Similarly, because the FTSA presumes all calls to Florida area codes are made to Florida residents or individuals located in-state, businesses must presume all calls to Florida area codes are subject to the FTSA, even if the recipient receives the call another state or lives in another state. Thus, the FTSA makes it impossible for businesses to make sales calls to consumers anywhere in the country without risk of liability under this Florida statute, effectively requiring those businesses to comply with the FTSA for all such calls everywhere—exactly the situation this Court discussed in *TelTech Systems*. Therefore, this Court should find that Section 8(a) violates the Dormant Commerce Clause.

**2.      Section 8(a) is Unconstitutionally Vague**

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment, which is made applicable to the states via the Fourteenth Amendment. *Id.* Similarly, the law must not "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253–54.

In this situation, the FTSA prohibits telephonic sales calls made using "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). However, Section 8(a) does not define this critical phrase or the key words in it, and the language and legislative history have used various terms to describe the type of technology regulated. For example, the legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system" (which is the terminology used in the Telephone Consumer Protection Act, 47 USC § 227 ("TCPA")) and "autodialer" interchangeably and without

8

consideration to possible different meanings, sometimes conflating them into a singular "technology." See Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 at 1–2, available at *https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/ 2021s01120.rc.PDF* (last visited Feb. 28, 2023). Further, prior to the amendments, the FTSA used different phrases throughout, even in the same sections, to describe covered technology. *See* Fla. Stat. § 501.059(8)(a)-(b) (2018). As such, it is completely unclear what technology constitutes an "automated system," it is impossible for callers to know whether they are using equipment regulated by the FTSA or if they must comply with the FTSA, and they can only guess at their peril as to what dialers are illegal.

Moreover, as discussed *supra* Part III.B.1, it is unclear whether Section 8 applies to called parties who are just visiting Florida. On its face, it prohibits any "person"—not just people or businesses doing business in Florida—from making automated calls without first obtaining consent. Fla. Stat.§ 501.059(8)(a). The statutory text does not expressly limit its application to calls received by Florida residents or calls made by Florida businesses or those doing business in the state. Thus, foreign companies are left to guess whether they might be subject to the FTSA's steep statutory damages if they unwittingly call or text one of their customers vacationing in Florida, or they may have to avoid making such calls altogether (nationwide) given that their customers may be visiting Florida at any given time. Therefore, this Court should find that Section 8(a) is unconstitutionally vague.

**3.    Section 8(a) Is An Unconstitutional Free Speech Restriction**

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). It is well established that the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* A law is "content-based" where "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*. This includes any laws "singl[ing] out specific subject matter for differential treatment." *Id.* at 169.

Restrictions on telemarketing which discriminate based on the call's content puts those restrictions at risk of being unconstitutional. For example, in *Barr*, there was a government-backed debt exception to the "automatic telephone dialing system" ("ATDS") restrictions of the TCPA. The exception permitted automated calls to collect a government debt without consent where such calls would otherwise be unlawful. This was deemed an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest. *Barr v. Am. Ass'n of*

*Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346–47 (2020). The plurality held that a law that differentiates between calls based on whether the call's content is to collect a government debt "is about as content-based as it gets." *Id.*

Section 8(a) provides "a person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a). A "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j). Thus, on its face, whether a call violates Section 8(a) depends on whether it is a "telephonic sales call" to a consumer about consumer (not commercial) goods or services—i.e., one specific type of call, caller and topic, to the exclusion of all others. As such, a debt collection call to a Florida consumer using an "automated system" without consent—which is not allowed under the TCPA's automated call restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other topics) is legal under the FTSA. However, a call for the purpose of selling a consumer good or service to that same person while using the same "automated system" without FTSA-proscribed consent is illegal.

"Content-based laws—those that target speech based on its communicative content are presumptively unconstitutional" and, as such, are subject to "strict scrutiny" review and therefore "may be justified [under the First Amendment] only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

To survive strict scrutiny review, the State bears the burden to "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Shultz*, 487 U.S. 474, 485 (1988).

Section 8(a) is not focused on an "exact source of evil," and it is both underinclusive and overinclusive, and omitted from the statute itself and its legislative history is any purpose or justification at all for limiting the application of Section 8(a) of the FTSA as it is. Legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored. *Reed*, 576 U.S. at 171–72. Section 8(a) is underinclusive, and therefore not narrowly tailored, because it still permits many types of unwanted calls, such as political calls

made during election season and it permits calls that are not made with an automated system. The Act is also overinclusive because it unnecessarily restricts calls consumers may have actually wanted or expected. For example, a consumer could contact a business about the purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term.

Nor does Section 8(a) survive intermediate scrutiny. Under that standard, the State bears the burden to show that the speech that is "neither misleading nor related to unlawful activity" may be restricted if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564 (1980). There is nothing in the FTSA's legislative history or the text of the statute itself suggesting the Florida legislature has articulated any particular interest, let alone a "substantial" interest, that the recent amendments to Section 8(a) were designed to address. There is nothing suggesting the legislature has proffered any reason for singling out and regulating only unwanted automated "telephonic sales calls" to a "consumer" about "consumer goods or services" as Section 8(a) now does, as opposed to all unwanted calls to any person on any topic.

**4.      Minimal Pleading Requirements**

Finally, Plaintiff fails to plead sufficient non-conclusory facts in support of a FTSA claim. In *Davis v. Coast Dental Services*, the district court held that, "[t]o properly allege a violation of [Section 8(a)], a plaintiff must allege some facts making it plausible that the defendant used an automated dialing system as described by the statute." *Davis v. Coast Dental Servs., LLC*, Case No. 8:22-CV-941-KKM-TGW, 2022 WL 4217141, at *2 (M.D. Fla. Sept. 13, 2022). There, the complaint alleged that, "'[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers." *Id*. Thus, in dismissing the FTSA claim under Rule 12(b)(6), the court held that "[t]his allegation is conclusory and the Court need not accept it as true" and that "it is merely possible that [the defendant] violated the FTSA, but not plausible as the pleading standard requires." *Id.* (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 679). Courts in the Eleventh Circuit hold that alleging use of an "automated telephone dialing system" ("ATDS" or "autodialer") and parroting the statute is not enough to state a TCPA claim or avoid dismissal under Rule 12(b)(6). *See, e.g.*, *Turizo v. Jiffy Lube Int'l, Inc.*, 2019 WL 4737696, at *3 (S.D. Fla. Sept. 27, 2019); *Padilla v.*

11

*Whetstone Partners, LLC,* 2014 WL 3418490, at *2 (S.D. Fla. 2014); *Mesa v. Am. Express Educ. Assurance Co.*, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017).[2]

In this case, just like in *Davis*, Plaintiff merely concludes that "'[t]o transmit the above telephonic sales text message call, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the [putative] Class members' telephone numbers." (Am. Compl., at ¶ 17). *See also* (*id.* at ¶¶ 18, 21, 31–33 (similar conclusory allegations about the "Platform" supposedly used to send the alleged texts, parroting the statutory language and case law). Yet, Plaintiff alleges no ***factual*** basis for these conclusions. For example, Plaintiff alleges the "Platform" used to send the texts at issue "has an auto-reply function that results in the automatic transmission of texts" (*id.* ¶ 33)—meaning if the recipient responded to a text, an automatic reply is generated—but she does not ever allege that ***she*** actually responded to any texts or received any such a reply. Such naked and speculative allegations are insufficient to avoid dismissal.

Plaintiff alleges that her number was "selected and dialed" from a ***pre-existing*** "list of numbers" (*id.* ¶ 17, 31), which myriad courts have found does not support an inference that an ATDS was used in TCPA cases, recognizing that the touchstone of an "automated" call is the "'random nature of the automation device'" used to make the call or send the texts at issue. *Perrong v. MLA Int'l, Inc.,* Case No. 6:20-cv-01606-RBD-EJK, 2021 WL 3036462, at *2 (M.D. Fla. July 2, 2021) (quoting *Camunas v. Nat'l Republican Senatorial Comm.,* 2021 WL 2144671, at *6 (E.D. Pa. May 26, 2021) (denying default judgment where "random nature" of device not alleged)); *see also Evans v. Ocwen Loan Servicing, LLC,* 2021 WL 7366534, at *3 (S.D. Fla. Oct. 21, 2021) (dismissing: "[i]f the Defendant placed phone calls at random or in sequence, the Plaintiffs would not have received multiple phone calls"), vacated and remanded on standing due to unclear amount of calls received, 2022 WL 17259718 (11th Cir. Nov. 29, 2022); *Garry v. NewRez, LLC*, Case No. 8:20-cv-2451-KKM-AEP, 2022 WL 1619592, at *7 (M.D. Fla. Mar. 7, 2022) (granting summary judgment, holding that "[p]hone systems that are capable of making telephone calls only to specific telephone numbers from dialing lists provided by consumers do not qualify as ATDS systems").

In sum, this Court should find Plaintiff's allegations regarding the use of an "automated system" fall short of meeting federal pleading standards.

---

[2] In the absence of binding state authority, "Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So. 2d 613, 615 (Fla. 3d DCA 2001) (citations omitted).

**C.     This Court Should Dismiss Count II Because an Injunction is Not a Standalone Cause of Action And Plaintiff Fails to Adequately Allege Future Injury**

First, "[i]njunctive relief is not a standalone cause of action. Instead, as relevant here, injunctive relief is a remedy." *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 21-11183, 2022 WL 3012298, at *5 (11th Cir. July 29, 2022). Count II is a count for an injunction for allegedly violating the FTSA. While this Court should dismiss this count for the same reason it should dismiss Count I, an independent reason to dismiss this count: it is an improper cause of action for an injunction.

It is well established that "an injunction is not a standalone cause of action; it is a remedy for which there must be an underlying cause of action entitling the plaintiff to such relief." *Lanzone on behalf of One Way Roofing, LLC v. Boggs*, Case No. 18-80399-CIV, 2018 WL 11436537, at *2 (S.D. Fla. June 13, 2018) (dismissing the standalone cause of action for an injunction). *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise."); *Fastway Moving & Storage, Inc. v. Ugarte*, Case No. 13-60832, 2013 WL 3927687, *3 (S.D. Fla. July 29, 2013) (finding that plaintiff did not meet first element for injunctive relief because he "fail[ed] to identify the cause of action upon which he is likely to succeed"); *Huck v. Philadelphia Consol. Holding Corp.*, Civil Action No. 1:19-cv-03336-SDG, 2020 WL 4726753, at *7 (N.D. Ga. Mar. 19, 2020) (dismissing count for injunctive relief because injunctive relief is not an independent cause of action); *N. Brevard Cnty. Hosp. Dist. v. Metrus Energy-Atlantis, LLC*, 620CV547ORL37EJK, 2020 WL 10459467, at *4 (M.D. Fla. July 10, 2020) ("the separate claim for injunctive relief is dismissed").

In this case, the count heading for Count II states that it is for "Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)." In the count's allegations, Plaintiff admits that "Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief." (Am. Compl., at ¶ 59). Thus, this is either a standalone count for injunctive relief or wholly duplicative of the prior count, Counts I.

Second, Plaintiff generally seeks injunctive relief for herself and the putative classes. *See* (Am. Compl., at Count II, and Prayer). However, a plaintiff seeking injunctive relief in any federal case must allege a threat of future injury. *See Cone Corp.*, 921 F.2d at 1203–1204; *Eland*, 471 F.3d

13

at 1207; *see also Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case on this basis where no threat of possible future injury alleged). Here, there is no threat of possible future injury and Plaintiff has alleged that two text messages occurred on September 8. Therefore, this Court should dismiss Count II.

**D.    Dismissal with Prejudice is Appropriate**

Dismissal with prejudice is appropriate where a plaintiff already has had a chance to amend but failed to cure the defects in his original complaint. *See, e.g.*, *Rance v. Rocksolid Granit USA, Inc.*, 2010 WL 11601453, at *6 (S.D. Fla. Sept. 2, 2010); *see also Frame v. Cal-W. Reconveyance Corp.*, 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, Plaintiff already had a chance to amend and had the benefit of Defendant's prior motion to dismiss when doing so but her FAC still fails to state a viable claim for relief against Defendant. Additionally, no amount of additional facts can make the FTSA constitutional. Thus, the FAC should be dismissed with prejudice.

**E.    Putative Class Members Subject to Arbitration**

To the extent that Plaintiff moves past the dismissal stage, it is believed that the vast majority of the putative class members will be subject to arbitration. Thus, although Plaintiff does not appear to have signed an arbitration agreement, because the putative class is unknown at this time, Seduction does not waive its right to compel Plaintiff, a non-signatory, to arbitrate, *see, e.g.*, *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017), to reduce the putative class size, or to deny class certification on the basis of arbitration.

**F.    Alternatively, Plaintiff's Proposed Classes are Facially Uncertifiable as Pled and Should be Stricken.**

Should the Court decide not to dismiss the FAC in its entirety for the reasons above, it should nevertheless strike Plaintiff's facially-defective class allegations under Rules 12(f) and 23, Fed. R. Civ. P.

Sometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012). In this regard, courts in the Eleventh

Circuit and elsewhere have widely recognized that they may and should in appropriate cases strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *See, e.g., Lawson*, 286 F.R.D. at 700-01; *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at *9–10 (M.D. Fla. June 6, 2012).

Courts have discretion to find proposed classes to be uncertifiable and strike them at the pleadings stage, in cases where, as here: (i) common questions of law and fact do not predominate; or (ii) the proposed definitions are impermissibly "fail-safe." *See, e.g.*, *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1–5 (C.D. Cal. Dec. 21, 2016); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4–5 (E.D. Mo. Jan. 24, 2013). As explained below, Plaintiff's proposed classes fit neatly into these categories.

1. **Common Questions of Law and Fact Do Not Predominate.**

Plaintiff's proposed classes would require individualized determinations on the issue of consent, and individualized determinations on whether an individual is a patient who agreed to a different dispute mechanism, among others, which demonstrates that common questions of law and fact would not predominate, as required by Rule 23(b)(3). To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.*, 275 F.R.D. 681, 695 (S.D. Fla. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). "[P]redominance is lacking" where "whether the calls were consented to—a threshold issue—is not subject to generalized proof." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016). Courts routinely deny certification in TCPA[3] cases on predominance grounds where individualized determinations of "consent" are needed. *See, e.g.*, *New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at *9–10 (S.D. Fla. Mar. 3, 2020); *Newhart*, 2016 WL 7118998, at *2; *Balthazor v. Cent. Credit Servs., Inc.*, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Tillman v. Ally Fin. Inc.*, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017). Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases and in others, where individualized determinations of "consent" are needed. *See, e.g.*, *Pepka and Lindsay, supra*; *Eldridge v. Cabela's Inc.,* 2017 WL 4364205, at *7–

---

[3] While Plaintiff amended the complaint to remove the TCPA allegations, case law on the TCPA is instructive.

15

11 (W.D. Ky. Sept. 29, 2017); *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020); *see also Baisden v. Credit Adjusts., Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[t]he context of the consent provided is critical" in a TCPA case). This Court should rule similarly.

Here, while Plaintiff's proposed class does not expressly include the word "consent," it is broadly defined to include every person in the United States who were sent "more than one text message regarding Defendant's property, goods, and/or services[.]" (Am. Compl., at ¶ 39). The other class is a Florida subclass. However, the FTSA's automated dialing provisions likewise only prohibit "***telephonic sales calls***"—and in that regard, a call does not qualify as a "solicitation" or "sales call" where (among other things) the plaintiff gave their "prior express invitation or permission" or "prior express written consent" receive the call. Fla. Stat. § 501.059(8)(a). Thus, the legal and factual issues of consent are inextricably intertwined with Plaintiff's proposed class definitions.

Moreover, the same problem exists for persons with an "established business relationship" with the caller, which is also context-dependent, can likewise vary wildly by individual, and can also prevent calls from qualifying as a "sales call" under the FTSA. *See also* Fla. Stat. § 501.059(1)(k)(3) (calls to parties with whom the caller has an "existing business relationship" with are not considered "unsolicited telephonic sales calls").

There are many different context-specific ways in which an "established business relationship" can arise under the FTSA, which will undoubtedly necessitate individualized determinations on those issues and thus prevent Plaintiff from establishing the predominance requirement. *See Lindsay*, 2013 WL 275568, at *5 (granting motion to strike, holding "the absence of prior consent and the absence of a prior business relationship" are individualized issues precluding certification in a TCPA case under Rule 23). As such, whether any texts in this case were sent without consent or if they constituted a "telephonic sales call" under the statute are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Rather, these issues would necessitate individualized factual and legal inquires on those critical threshold issues, among others. Thus, Plaintiff's proposed class definitions should be stricken on this basis alone.

### 2. Plaintiff's Proposed Classes Are Impermissibly Fail-Safe.

Plaintiff's proposed class definitions are also impermissibly fail-safe in violation of Rule 23 because the Court must make a determination on the merits of putative class members' individual claims to determine membership. *See, e.g.*, *Fennell v. Navient Sols., LLC*, 2019 WL 3854815, at *3 (M.D. Fla. June 14, 2019). Specifically, a fail-safe class is one that includes only those putative class members who are entitled to relief. *Id.* Fail-safe classes are not permitted because they "shield[] the putative class members from receiving an adverse judgment" and "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*, 2020 WL 7365264, at *3 (M.D. Fla. Dec. 15, 2020).

Here, Plaintiff's proposed classes are impermissibly fail-safe because membership depends on the merits of the putative class members' underlying claims. Indeed, the proposed FTSA class is comprised of all persons in Florida who (1) "were sent more than one text message regarding Defendant's property, goods, and/or services" (*i.e.*, whether the callers received a "telephonic sales call" and did not have a "preexisting business relationship"); and (2) "using the same equipment or type of equipment utilized to call Plaintiff" (*i.e.,* only including those who purportedly received messages from an automated messaging system). The other class is a Florida subclass. Each of these is undoubtedly a merits-based inquiry going directly to the heart of the underlying FTSA claim here, and there is no objective way to determine who is a class member as pleaded. Thus, Plaintiff's proposed classes are also impermissibly fail-safe and properly stricken at the pleadings stage for this additional reason. *See, e.g.*, *Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292, at *3 (E.D. Va. June 22, 2020) (striking as impermissibly fail-safe a similar proposed TCPA class).

### IV.  CONCLUSION

**WHEREFORE**, Seduction Cosmetic Center, respectfully requests this Court to grant this motion, to dismiss the Amended Complaint with prejudice, and in the alternative to strike Plaintiff's facially-uncertifiable class-related allegations, and to order such further relief as deemed just.

Respectfully Submitted,

**LALCHANDANI SIMON PL**
*Attorneys For Seduction Cosmetic Corp*
25 S.E. 2nd Avenue, Suite 1020
Miami, Florida 33131
(305) 999-5291 (office)
(305) 671-9282 (fax)

By: */s/ Kubs Lalchandani*
    Kubs Lalchandani, Esq.
    Florida Bar No. 63966
    kubs@lslawpl.com
    Daniel E. Davis, Esq.
    Florida Bar No. 104970
    ddavis@lslawpl.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2023, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF, which effectuated service on all counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF.

By: */s/ Daniel E. Davis*
    Daniel E. Davis