## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:22-cv-23320-JEM

**DIANNA CRAVENER** and
**CHRISTIANAH ADARAMAJA**,
individually and
on behalf of all others similarly situated,                    **CLASS ACTION**

     Plaintiff,                                                **JURY TRIAL DEMANDED**

v.

**SEDUCTION COSMETIC CENTER CORP**,

     Defendant.
_____/

### FIRST CONSOLIDATED CLASS ACTION COMPLAINT

     Plaintiffs Dianna Cravener and Christianah Adaramaja bring this class action against Defendant Seduction Cosmetic Center Corp. and allege as follows upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

### NATURE OF THE ACTION

     1.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

     2.     To promote its cosmetic services and goods, Defendant engages in unsolicited text message marketing, including to individuals who have registered their telephone numbers on the National Do-Not-Call Registry, and to those who have not provided Defendant with their prior express written consent as required by the FTSA.

1

3.      Defendant's unsolicited text message spam caused Plaintiffs and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiffs' and the Class members' telephones.

4.      Through this action, Plaintiffs seek an injunction and statutory damages on behalf of Plaintiffs and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5.      Plaintiff Dianna Cravener is, and at all times relevant hereto was, a citizen and resident of Pasco County, Florida.

6.      Plaintiff Christianah Adaramaja is, and at all times relevant hereto was, a citizen and resident of Hillsborough County, Florida.

7.      Plaintiffs are, and at all times relevant hereto were, individuals and "called part[ies]" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiffs were the regular users of the cellular telephone numbers that received Defendant's telephonic sales calls.

8.      Defendant is, and at all times relevant hereto was, a Florida corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).  Defendant maintains its primary place of business and headquarters in Miami, Florida. Defendant directs, markets, and provides business activities throughout the State of Florida.

## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction over Plaintiff Christianah Adaramaja's TCPA claims pursuant to 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction over Plaintiff Dianna Cravener's FTSA claims pursuant to 28 U.S.C. § 1367.

11.     Defendant is subject to general personal jurisdiction in Florida because Defendant is incorporated and headquartered in Miami, Florida.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District

**FACTS PERTAINING TO PLAINTIFF DIANNA CRAVENER**

13.     Commencing on or about September 8, 2022, and at other times approximately around that date, Defendant sent telephonic sales calls to Plaintiff Dianna Cravener's cellular telephone number, including the following:





Seduction Cosmetic: Spooktacular Halloween promo😆

Get a TRUE BBL with Dr. True Lansden for only $4000 😱
Includes:
-OR Fees
-Anti embolism stockings
-Post Op visits

You can't miss this special 🥳
Limited time only*

😆FINANCING AVAILABLE ‼️

Text 1 NOW for a FREE consultation
Reply to STOP to be Removed

Send message 🔘

(786) 686-2288   📞 ⋮



Seduction Cosmetic: For all fans of the queen 👑 Dr. Abeer Sawwaf, YOU CAN'T MISS THIS SPECIAL.

Abeer's famous BBL+ Lipo360+Tummy Tuck aka BBTuck, ONLY $8500 🤑

This promo is for a limited time 🕐

Text 1 NOW for a FREE consultation
Reply to STOP to be Removed

Send message 🔘

4

14.    As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was to solicit the sale of consumer goods and/or services.

15.    The messages also advertise and call attention to Defendant's products and related services.

16.    Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

17.    Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

18.    Plaintiff was in Florida when Plaintiff received the above text message call, and Defendant's violative conduct occurred in substantial part in Florida.

**FACTS PERTAINING TO PLAINTIFF CHRISTIANAH ADARAMAJA**

19.    Commencing on or about October 2022, and at other times approximately around that date, Defendant sent the following telephonic sales communications to Plaintiff Christianah Adaramaja's cellular telephone number:







20.     As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was to solicit the sale of consumer goods and/or services.

21.     The messages also advertise and call attention to Defendant's products and related services.

22.     Plaintiff utilizes her cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.  In other words, Plaintiff's cellular telephone is Plaintiff's home telephone number and Plaintiff makes and receives personal calls on her cellular telephone. Moreover, Plaintiff's cellular telephone is the primary means of reaching Plaintiff at her residence.

23.     Plaintiff registered her cellular telephone number on the National Do-Not-Call Registry and the number was listed on the registry for over 30 days prior to Defendant's first text message solicitation.

24.     Plaintiff was in Florida when Plaintiff received the above text message calls, and Defendant's violative conduct occurred in substantial part in Florida.

25.     Plaintiff has never had any type of business relationship with Defendant and never inquired regarding Defendant's products or services.

**FACTS PERTAINING TO PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS**

26.     Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

27.     To transmit the above telephonic sales text message call, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

28.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

29.     Indeed, the lengthy and generic nature of the messages depicted above, along with the "Reply to STOP to be Removed" instructions – a telltale sign of automated platform – supports the conclusion that Defendant utilized an automated system to mass transmit the messages to Plaintiff and other consumers. Moreover, on its website, Defendant admits to using an "automatic telephone dialer" to solicit consumers. *See* www.seductioncosmetic.com.

30.     The exact details regarding the capabilities of the equipment utilized by Defendant to text message Plaintiffs and the class members is solely within Defendant's knowledge and possession.

31.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

32.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

33.    Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

34.    Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

35.    Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

36.    The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

37.    Compliance with the FTSA will not result in Defendant having to cease its business operations.

38.    Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

39.    Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

40.    Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

41.    The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

42.    The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

11

43.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

44.     Plaintiffs never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiffs' cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

45.     Plaintiffs never invited or expressly authorized Defendant's transmission of automated text message solicitations to their cellular telephones.

46.     More specifically, Plaintiffs never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

47.     Since July 1, 2021, on information and belief, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

48.     Defendant's unsolicited text message spam caused Plaintiffs and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. Defendant's text messages also occupied storage space on Plaintiffs' and the Class members' telephones.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

49.     Plaintiffs bring this lawsuit as a class action on behalf of Plaintiffs individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiffs seek to represent are defined as:

> **FTSA National Class**: **All persons in the United States who, (1) were sent more than one text message regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of**

12

equipment utilized to call Plaintiff, (3) from July 1, 2021 through the date of class certification.

**FTSA Florida Subclass**: All persons in Florida who, (1) were sent more than one text message regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) from July 1, 2021 through the date of class certification.

**DNC Class**: All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) received more than one text message call within any 12-month period; (2) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's property, goods, and/or services; (4) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (5) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.

50.     Defendant and its employees or agents are excluded from the Classes.

**NUMEROSITY**

51.     Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 persons. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

52.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

53.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are: [1] Whether Defendant initiated telephonic sales calls to Plaintiffs and the Class members; [2] Whether Defendant can meet its burden of

showing that it had prior express written consent to make such calls; [3] Whether Defendant is liable for damages, and the amount of such damages; and [4] Whether Defendant properly placed calls in violation of the TCPA's National Do-Not-Call Registry.

54.     The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

55.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

56.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes and have retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

14

58.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATION OF FLA. STAT. § 501.059
### (On Behalf of Plaintiff Dianna Cravener and the FTSA Classes)

59.     Plaintiff Dianna Cravener re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

61.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(i).

62.     "Prior express written consent" means an agreement in writing that:

1.  Bears the signature of the called party;

2.  Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

15

3.  Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4.  Includes a clear and conspicuous disclosure informing the called party that:

   a.  By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b.  He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

63.    Defendant failed to secure prior express written consent from Plaintiff and the Class members.

64.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

65.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

66.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

67.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 64.1200(c)**
**(On Behalf of Plaintiff Christianah Adaramaja and the DNC Class)**

68.     Plaintiff Christianah Adaramaja re-alleges and incorporates the allegations set forth in paragraphs 1 through 58 as if fully set forth herein.

69.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

71.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

72.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

73.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

17

74. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiffs' counsel as Class Counsel;

b) An award of statutory damages for Plaintiffs and each member of the Classes as applicable under the FTSA and/or TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with the TCPA's do-not-call requirements and registry; and

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: April 28, 2023

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**DAPEER LAW, P.A.**
Rachel Dapeer
Florida Bar No. 108039
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
T: 305-610-5223
*rachel@dapeer.com*

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301
*Counsel for Plaintiffs*